UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JOHNNIE H. HOUSE *et al.*,

                                Plaintiffs,

     v.                                      Civil Action No. 3:11–CV–90

HSBC FINANCE CORPORATION *et al.*,

                                Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on the Motion to Dismiss filed by Defendants HSBC Finance Corporation and Household Realty Corporation of Virginia. (Doc. No. 7). In this action, Plaintiffs Johnnie H. House and Barbara House ask the Court for a judgment declaring that they validly rescinded a refinance mortgage credit transaction under the federal Truth-in-Lending Act. For the reasons stated below and from the bench at the hearing on this matter, the Court will GRANT the motion to dismiss.

**I. BACKGROUND**[1]

On February 12, 2008, the Plaintiffs entered into a refinance credit transaction with HSBC Finance Corporation ("HSBC") doing business as Household Realty Corporation of Virginia ("HRCV") in which the Plaintiffs were the borrowers and HRCV was the creditor. The principal amount of the loan was $181,841.07, and the amount financed was $172,599.02. (Doc. No. 1, Ex. A, at 5). HRCV disclosed the finance charge as $406,291.46.

---

[1] These facts are as presented in the Complaint (Doc. No. 1).

1

The amount of the disclosed prepaid finance charge was $9,242.05. The prepaid finance charge consisted of orientation and closing fees but did not include other fees incurred incident to the transaction, such as a $225 title examination fee. HRCV instead included this fee in the amount financed.

The Plaintiffs defaulted on their loan, and HRCV initiated foreclosure proceedings through Equity Trustees in February 2011. In response, the Plaintiffs, by counsel, claimed rescission of the credit transaction pursuant to the federal Truth-in-Lending Act (TILA). The February 10, 2011, rescission notice stated several grounds for the rescission: (1) material under-disclosure of the finance charge based on the $225 title examination fee; (2) lack of clarity in the notice of the right to cancel due to an arbitration clause and a customer satisfaction guarantee that had different cancellation provisions; and (3) lack of clarity in the notice of the right to cancel due to the presence of a non-existent address. (Doc. No. 1, Ex. F, at 2-3).

The Plaintiffs filed this action on February 10, 2011, requesting a judgment declaring that they validly rescinded the refinance transaction. In their Complaint, they raise the same TILA claims presented in the rescission notice, and they aver that they would be able to tender $11,889.64. The Defendants responded with the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiffs request leave to amend should the Court decide to grant the motion to dismiss.

## II. **LEGAL STANDARD**

Rule 12 allows a defendant to raise a number of defenses to a claim for relief at the pleading stage. Among these is the defense that the pleadings fail to state a claim upon

which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). Where a motion pursuant to Rule 12(b)(6) contends that a plaintiff's pleadings are insufficient to show entitlement to relief, a court must resolve the motion by reference to the allegations in the complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The question then before the court is whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact." *Id.* at 192-93. When adjudicating a motion to dismiss, a court is usually limited to the pleadings and matters of judicial notice, but a court may consider documents attached to the complaint or "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

The pleadings need not be supported by evidence but must "state a claim to relief *that is plausible on its face.*" *Francis*, 588 F.3d at 193 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). A plausible claim is one that contains more than just "unadorned, the-defendant-unlawfully-harmed-me-accusation[s]." *Iqbal*, 129 S.Ct. at 1949. If the complaint alleges—directly or indirectly—each of the elements of a viable legal theory, the plaintiff should be given the opportunity to prove that claim.

In resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's well-pled allegations, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). *See also Iqbal*, 129 S.

Ct. at 1950. With these principles in mind, a court must ultimately ascertain whether the plaintiff has stated a plausible, not merely speculative, claim for relief.

### III. DISCUSSION

TILA regulates the relationship between lenders and borrowers to facilitate the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a) (2006). To that end, TILA requires that creditors make certain disclosures to borrowers, including disclosures of the finance charge and of the borrower's right to rescind the transaction if the creditor retains a security interest in the borrower's principal dwelling. *Id.* §§ 1635(a), 1638(a). A creditor's failure to provide proper notice or make required disclosures enables the borrower to rescind the credit transaction within three years of closing. *Id.* §§ 1635(a),(f). Upon a debtor's valid rescission claim, "he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void." *Id.* § 1635(b). A failure to make the required disclosures, or a failure to recognize a valid rescission, also subjects a lender to statutory damages of up to $1,000 per offense. *See* 15 U.S.C. § 1640(a)(2)(A)(ii).

A. **Title Examination Fee**

For a property that has entered foreclosure, the disclosed finance charge is considered "accurate . . . if the disclosed finance charge: (i) is understated by no more than $35; or (ii) is greater than the amount required to be disclosed." *Id.* § 226.23(h)(2). TILA defines the finance charge as "the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an

4

incident to the extension of credit." 15 U.S.C. § 1605(a). It "does not include charges of a type payable in a comparable cash transaction." *Id.* Regulation Z lists several charges that are not considered finance charges, such as credit application fees, charges for late payments or exceeding credit limits, and seller's points. 12 C.F.R. § 226.4(c). Real-estate related fees are also excluded from the finance charge, if they are "bona fide and reasonable in amount." *Id.* § 226.4(c)(7). Examples of excludable real estate fees include title examination fees, credit-report fees, and fees for preparing loan-related documents. *Id.*

The Plaintiffs assert that "[t]he local going rate for title examination at the time of the credit transaction was not more than $150." (Compl. ¶ 11(F)). Thus, the Plaintiffs argue, the $225 title examination fee was unreasonable and "at least $75 of the title examination fee was a hidden finance charge, resulting in an under disclosure of the finance charge by more than the $35 tolerance for under disclosure." (Pl.'s Mem. Opp'n 9).

This Court, along with other courts in this district, has held that the type of averment made by the Plaintiffs regarding the prevailing local rate for examination fees is not sufficient to withstand a motion to dismiss. *See Hudson v. Bank of Am., N.A.*, No. 3:09-CV-462, 2010 WL 2365588, at *5 (E.D. Va. June 11, 2010); *also Rowe v. Bank of Am., N.A.*, 4:10-CV-92, slip. op. at 4-5 (E.D. Va. Apr. 11, 2011); *Little v. Bank of Am.*, No. 2:10-CV-311, 2011 WL 144911, at *7-8 (E.D. Va. Jan. 3, 2011). In *Hudson*, this Court found that although the plaintiff claimed that the $819 title insurance fee he paid was unreasonable because the local prevailing rate was less than $500,

> these averments merely establish that [the borrower] paid more for title insurance than another borrower might have. In the absence of any allegations regarding the extent to which [the creditor] augmented its return through title insurance fees or more comprehensive allegations regarding the prevailing rates for title insurance on properties similar to [the

5

> borrower's], the [complaint] merely shows the possibility of wrongdoing but does not nudge the claim from possible to plausible.

*Hudson*, 2010 WL 2365588, at *5.

The two cases the Plaintiffs rely upon do not overcome this Court's holding in *Hudson*. In *Curry v. Flagstar Bank, F.S.B.*, No. 1:10-CV-1169 (E.D. Va. Apr. 1, 2011), the court denied the portion of the defendant's motion to dismiss that involved the title examination fee after the plaintiff abandoned her other claims. Because the court did not issue an opinion with this order, there is no foundation for understanding this decision or applying it to this matter. The second case, *Rodriguez v. GMAC Mortgage Corporation,* No. 3:07-CV-665 (E.D. Va. Oct. 10, 2008), was decided before *Iqbal* and *Twombly* and on a summary judgment motion; thus, it did not consider the pleading standards relevant to this motion to dismiss. Other courts have declined to apply *Rodriguez* in light of these deficiencies. *See Rowe*, No. 4:10-CV-92, slip. op. at 4 n.1; *King v. Deutsche Bank Nat'l Trust Co.*, No. 3:10-CV-41, 2010 WL 3745599, at *6 (E.D. Va. Sept. 21, 2010).

Given the treatment of such claims in this district, the Court finds that the Plaintiffs' averment that the title examination fee was unreasonable in light of local prevailing practices is not supported by factual allegations showing plausible wrongdoing. Instead, that averment merely establishes that the Plaintiffs paid more for title examination than another borrower might have. Thus, the Complaint "merely shows the possibility of wrongdoing but does not nudge the claim from possible to plausible." *Hudson*, 2010 WL 2365588, at *5.

**B. <u>Notice of Right of Rescission</u>**

For notice of a borrower's right of rescission to be proper under TILA, a creditor must provide that notice in a separate document that "clearly and conspicuously disclose[s]" the right to rescind. 15 U.S.C. § 1635(a). Pursuant to authority delegated by Congress, 15 U.S.C. §§ 1604(b), the Board of Governors of the Federal Reserve System has promulgated a set of model notice forms as part of its comprehensive TILA regulations known as Regulation Z. *See* 12 C.F.R. §§ 226.1-226.59 (2010); *id.* § 226 apps. G, H. To comply with the notice requirements, a creditor must use either one of these model forms or a "substantially similar notice." *Id.* § 226.23(b)(2); *see also* 15 U.S.C. § 1604(b).

HRCV provided the Plaintiffs with a three-page document entitled "Notice of Right to Cancel." (Doc. No. 1, Ex. B, at 2-4). This notice of rescission stated that if the Plaintiffs decided to cancel the loan transaction, they needed to send notification to the following address:

> HRCV Corporation of Virginia
> 583 Southpark Boulevard
> Colonial Heig [sic], VA 23834

HRCV also provided the Plaintiffs with a separate "Arbitration Rider," which the loan agreement expressly incorporates. (Doc. No. 1, Ex. A, at 7). The arbitration agreement contains its own cancellation provision:

> To reject this Arbitration Rider, you must send Lender a signed writing (Rejection Notice) that is received within thirty (30) days after the date shown on the bottom left hand of this Arbitration Rider. The Rejection Notice must be sent to the following address: P.O. Box 279, Mt. Prospect, IL 60056 . . . .

(Doc. No. 1, Ex. D, at 3-4).

HRCV also provided the Plaintiffs with a separate loan summary document that contains the following "Satisfaction Guarantee":

7

> Because we want you to be completely satisfied, we offer a Satisfaction Guarantee. If for any reason you are not satisfied with your loan and you repay it in full within 10 days after the loan funds are disbursed, other than with a refinance of this loan with us, we will refund any interest charges, closing costs and fees. We will also waive any prepayment penalty applicable to your loan.

(Doc. No. 1, Ex. E, at 2).

1. **Arbitration Rider and Satisfaction Guarantee**

The Plaintiffs contend that the Arbitration Rider and Satisfaction Guarantee undermine the notice of the right to cancel. First, they argue that because the arbitration agreement includes a different mailing address from the one included in the notice of the right to cancel, it compromised the notice of the right to cancel. Next, they argue that the Satisfaction Guarantee, which provided a ten-day cancellation window, encouraged borrowers to forego cancelling within three days as provided in the TILA notice of right to cancel. They claim that cancellation under the Satisfaction Guarantee would have been less favorable to borrowers because it would have required them to repay all the principal of the loan, less interest, fees, and costs.

The arguments set forth by the Plaintiffs in this matter are similar to those in another case argued by the Plaintiffs' counsel and dismissed on summary judgment in October 2010. In *Taylor v. Deutsche Bank National Trust Company*, this Court stated the following:

> The question is, does the existence of the arbitration cancellation provision negate a separate and clear notice of the right to rescind the entire credit transaction. The obvious answer is no.
>
> Nothing in TILA either forbids separate arbitration agreements or requires creditors to use identical cancellation language and requirements in rescission notices and other provisions

> associated with credit transactions. [The creditor] provided [the borrower] with notice of his right to cancel in a separate document using the exact language modeled in Regulation Z. The arbitration agreement was a separate agreement with clearly identified cancellation provisions. The fact that the documents' cancellation requirements were different has no effect on the clarity and conspicuousness of the rescission notice. Therefore, the Court finds that the rescission notice satisfies TILA's requirements.

No. 3:10-CV-149, 2010 WL 4103305, at *3 (E.D. Va. Oct. 18, 2010).

As the Court noted in *Taylor*, nothing in TILA require creditors to use identical language in separate loan documents. The key inquiry is whether notice of the right to rescind the entire credit transaction is separate, clear, and conspicuous. In this case, nothing in the Satisfaction Guarantee or Arbitration Rider undermines the appropriateness of the separate notice of right to cancel. Therefore, the Court finds that the rescission notice satisfies TILA's requirements.

**2. Mailing Address**

The Plaintiffs also argue that the mailing address provided in the notice of the right to cancel undermined the notice because there is no "Colonial Heig" in Virginia. The name, street address, state, and zip code provided were correct; thus, an ordinary borrower would have been able to determine where to send the rescission notice by "exercis[ing] some degree of care and study." *Jacobsen v. Bank of Am., N.A.*, 3:09-CV-77, 2010 WL 5140686, at *6 (W.D. Va. Dec. 13, 2010) (quoting *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 118 (2d Cir. 1983)). Therefore, this purported typographical error (i.e., "Colonial Heig" instead of "Colonial Heights") is not sufficient to warrant rescission.

9

C. **Ability to Tender**

In valid rescission actions, plaintiffs must allege an ability to tender the principal amount of the loan back to the bank. *See Am. Mortg. Network v. Shelton*, 486 F.3d 815, 819-22 (4th Cir. 2007) ("The equitable goal of rescission under TILA is to restore the parties to the 'status quo ante.'"). Under *Shelton*, a borrower seeking TILA rescission of a credit transaction secured by his primary residence must show that he has the ability to tender the proceeds of the loan to his creditor in return for the release of the security interest upon his property. *Id.* at 821.

This right of rescission does not apply to "[a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." 12 C.F.R. § 226.23(f)(2). In that situation, the right of rescission applies only "to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." *Id.*

Although TILA requires borrowers claiming rescission to tender the full amount of principal back to the lender, the Plaintiffs have not pled an ability to do so. Instead, they have pled that they would be able to tender the total extension of new credit, not including settlement charges, which would total $11,889.64.

To the extent the Plaintiffs rely on the refinancing exemption to plead an ability to tender this lower amount, the Plaintiffs have not pled facts to support the application of that extension. The exhibits attached to the Complaint show that the creditor in the refinance transaction is HRCV (Doc. No. 1, Ex. A, at 2; Doc. No. 1, Ex. B, at 3), while the creditor for the original loan was "HFC" (Doc. No. 1, Ex. C, at line 1502; Doc. No. 1, Ex. E).

In an attempt to argue that the extension applies, the Plaintiffs attached to their response to the motion to dismiss a Virginia State Corporation Commission memorandum purportedly showing that HSBC operated in Virginia under the names Household Finance Corporation and HRCV. (Mem. Opp'n, Doc. No. 16, Ex. 8). Based on this document, the Plaintiffs allege that the refinance transaction was with the same creditor, HSBC. This memorandum is undated and without foundation; in addition, it contradicts the exhibits attached to the Complaint. Furthermore, if considered by the Court, this document would only address the Plaintiffs' failure to plead an ability to tender, which is only one of the deficiencies in their pleadings. Thus, the memorandum does not appear to be the type of "integral" and "authentic" document that a court may consider at the motion to dismiss phase. *See Trimble Navigation Ltd.*, 484 F.3d at 705.

Accordingly, the Court finds that the Plaintiffs have not pled facts showing that the refinancing exemption applies and have not properly pled an ability to tender.

### IV. <u>CONCLUSION</u>

For these reasons, the Court GRANTS the motion to dismiss. The Plaintiffs have requested leave to amend their complaint. The Court notes, however, that counsel for the Plaintiffs has filed numerous similar complaints in this district, and courts have repeatedly dismissed them as failing to state claims upon which relief can be granted. Furthermore, counsel for the Plaintiffs has failed to cure similar pleading deficiencies in other matters, *e.g., Parham v. HSBC Mortgage Corporation* (USA), No. 3:09-CV-832 (E.D. Va. filed Dec. 30, 2009). Therefore, the Court finds that granting the Plaintiffs leave to amend would be futile

and therefore declines to do so. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

_____/s/_____  
James R. Spencer  
Chief United States District Judge

ENTERED this __16th__ day of May 2011.